UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:18-cv-03278

FRED NEKOUEE, individually, :
:
Plaintiff, :
:
vs. :
:
M & H DEVELOPMENT, LLC, a Colorado limited liability company; :
:
Defendant. :
_______________________________________/

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, M & H DEVELOPMENT, LLC, a Colorado limited liability company (sometimes referred to as "Defendant"), for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1. Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2. Defendant's property, a Comfort Inn hotel, is located at 11292 Business Park Circle, Firestone, Colorado 80504, in Weld County, Colorado ("Comfort Inn").

3. Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the property. The Defendant's property is located in and does business within this judicial district.

4. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. See also 28 U.S.C. § 2201 and § 2202.

5. Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA. Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

6. Mr. Nekouee travels to the Longmont-Firestone area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

7. Fred Nekouee stayed at the Comfort Inn which forms the basis of this lawsuit on August 1, 2018 (checked in) and August 2, 2018 (checked out), and he bought goods and sought to avail himself of the services at Comfort Inn on such dates.

8. Fred Nekouee visited the Longmont-Firestone area near the Comfort Inn again on October 3, 2018 to attend a heavy equipment auction, and he visited Rocky Mountain National Park on October 2, 2018.

9. Fred Nekouee plans to return to the property to avail himself of the goods and services offered to the public at the property.

10. The Plaintiff has definite plans to return to the Longmont-Firestone area and to the Comfort Inn in January of 2018.

11. Comfort Inn is close to the heavy equipment auction and dealerships he visits, and it is a good hotel location from which to make day trips to Rocky Mountain National Park.

12. The Plaintiff likes to stay at moderately-priced hotels that are a chain like Comfort Inn.

13. The Plaintiff plans to return to Comfort Inn again.

14. For the reasons set forth in paragraphs 6-13 and 26, Fred Nekouee plans to return to the Comfort Inn.

15. The Plaintiff has encountered architectural barriers at the subject property.

16. The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the property, and have impaired his use of the restrooms in Comfort Inn.

17. The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

18. The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

19. Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

20. On his visit to the Comfort Inn, the Plaintiff encountered excessively steep running slopes and cross slopes in its parking lot, access aisles and walkways.

21. The Plaintiff encountered and observed barriers to access in the accessible guest restroom and in the restrooms in the lobby at the Comfort Inn.

22. The Plaintiff is deterred from visiting the Comfort Inn because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

23. Defendant owns, leases, leases to, or operates a place of public accommodation (an inn, hotel, motel, or other place of lodging) as defined by the ADA, 42 U.S.C. § 12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104. Defendant is responsible

for complying with the obligations of the ADA.

24. The place of public accommodation that the Defendant owns, operates, leases or leases to is the Comfort Inn.

25. Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 29 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

26. Fred Nekouee desires to visit the Comfort Inn not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

27. The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

28. The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

29. Preliminary inspections of the Comfort Inn have shown that violations exist. The violations that Fred Nekouee personally encountered or observed include, but are not limited to:

**PARKING**

a. The accessible sign identifying the parking space for disabled patrons is installed

at about 40 inches above the ground and less than the minimum required height of 60 inches above the ground, in violation of Federal Law 2010, ADAAG § 502.6. The Plaintiff observed this sign.

b. In the parking lot, as shown in the photograph below, there are no parking spaces with van accessible signage, in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6. The Plaintiff observed this lack of signage.



c. In the parking lot, the parking spaces for disabled patrons have running slopes in areas within the parking spaces as steep as about 1:31.3 (3.2%) to as steep as about 1:20.4 (4.9%), which slopes are steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The Plaintiff encountered a steep running slope in two of the parking spaces, and it made it difficult for him to unload from and load into his vehicle.

d. In the parking lot, the running slope of the 96-inch wide access aisle serving the disabled parking spaces is about 1:31.3 (3.2%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The Plaintiff encountered this steep slope while moving in his wheelchair, and it made him unstable in his wheelchair.

e. In the parking lot, the running slope of the 60-inch wide access aisle serving the disabled parking spaces is as steep as about 1:27 (3.7%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The Plaintiff encountered this steep slope while moving in his wheelchair, and it made him unstable in his wheelchair.

f. As shown in the photographs below, the transition from the access aisle to the curb ramp leading to the accessible route to the hotel contains a change of level of about 1 inch and greater than the maximum allowed change of level of 0.25 inches, in violation of Federal Law 2010, ADAAG §§ 303.2 and 405.4. The Plaintiff encountered this change of level while moving in his wheelchair, it caused his wheelchair to stop, and he required assistance to move over this change of level in his wheelchair.





g. The accessibility ramp top landing has a slope of 1:27.8 (3.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010,

ADAAG § 405.7.1. The Plaintiff encountered this slope in his wheelchair, and due to the slope, he could not rest at the top of the ramp in his wheelchair.

**MEN'S RESTROOM IN LOBBY**

h. The force needed to open the entrance door to the men's restroom in the lobby of Comfort Inn is about 12 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. The Plaintiff encountered this condition, and due to the force necessary to open the door, he could not open this door by himself.

i. The toilet paper dispenser in the men's restroom in the lobby is outside the reach range of an individual in a wheelchair, which dispenser centerline is about 14 inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches, in violation of Federal Law 2010, ADAAG § 604.7. The Plaintiff encountered this condition, and he could not reach the toilet paper from a normal sitting position on the toilet.

j. In the men's restroom in the lobby, the paper towel dispenser outlet is about 52 inches above the finish floor, and higher above the finish floor than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.1. In his wheelchair, the Plaintiff could not reach the paper towels.

**WOMEN'S RESTROOM IN LOBBY**

k. The force needed to open the entrance door to the women's restroom in the lobby of Comfort Inn is about 10 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a

door, in violation of Federal Law 2010, ADAAG § 404.2.9. The Plaintiff encountered this condition, and due to the force necessary to open the door, he could not open this door by himself.

l. In the women's restroom in the lobby, the rear wall grab bar only extends 15 inches and 21 inches from the centerline of the water closet and does not extend a minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side, in violation of Federal Law 2010, ADAAG § 604.5.2. As a result of the placement of the rear grab bar, the Plaintiff had difficulty transferring himself from his wheelchair to sit on the toilet.

m. In the women's restroom in the lobby, the paper toilet dispenser centerline is about 15 inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7. Due to the position of the toilet paper dispenser, the Plaintiff could not reach the toilet paper from a normal sitting position on the toilet.

**INTERIOR FOOD SERVICE AREA**

n. In the food service area, the mini-fridge door handle requires tight grasping, pinching, or twisting of the wrist and it cannot be opened with a closed fist or loose grip, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7. The Plaintiff could not open the door to the mini-fridge with a closed fist or loose grip.

o. In the food service area, the toaster dispenser handle, the coffee/hot water dispenser handle, the tea bag and condiment stand, the juice machine dispenser, the hot water machine dispenser, the scrambled egg container handle, the yogurt in the mini-fridge, the utensils holders, and the pancake batter cup and dispenser oil spray, are all higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal

Law 2010, ADAAG § 308.2.2. In his wheelchair, the Plaintiff could not get his own breakfast due to the height above the floor of each of these items.

**ACCESSIBLE GUESTROOM, ROOM 306**

p. The force needed to open the door to the accessible guestroom, room 306, is about 12 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. The Plaintiff encountered this condition, and due to the force necessary to open the door, he could not open this door by himself.

q. In accessible guestroom 306, to open the refrigerator door requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG § 309.4. The Plaintiff tried to open this refrigerator door, and he could not open it with a closed fist or loose grip.

r. In accessible guestroom 306, the twist, control knobs on the microwave require tight grasping, pinching or twisting of the wrist to operate the microwave, in violation of Federal Law 2010, ADAAG §§ 606.4 and 309.4. The Plaintiff tried to operate this microwave, and he could not use the control knobs with a closed fist or loose grip.

s. In accessible guestroom 306, the clear floor or ground space between the bed and the air conditioning unit is only about 22 inches, which clear floor space is less than the minimum required clear floor space of 30 inches, in violation of Federal Law 2010, ADAAG § 305. Due to this lack of space, the Plaintiff could not position his wheelchair to adjust the air conditioning unit.

t. In accessible guestroom 306, the ice container and cups, and the coffee maker and its inlet, are placed on a counter and are all more than 48 inches above the finish floor,

in violation of Federal Law 2010, ADAAG § 308.2. In his wheelchair, the Plaintiff could not reach the ice container, the cups or use the coffee maker.

u. In accessible room 306, the night lamp switch is higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2. The Plaintiff observed this condition.

v. In accessible room 306, the lower end of the curtain pull rod is about 58 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2. In his wheelchair, the Plaintiff tried but could not use this curtain pull rod due to its height above the floor.

**RESTROOM IN ACCESSIBLE GUESTROOM 306**

w. In the restroom of guestroom 306, the top of the gripping surface of the top most grab bar on the tub back wall is about 30 inches above the floor and not within a minimum of 33 inches and a maximum of 36 inches above the finish floor, in violation of Federal Law 2010, ADAAG §§ 607.4 and 609.4. The Plaintiff observed this condition.

x. In the restroom of guestroom 306, the bathtub with permanent seat does not have a horizontal grab bar on the control end wall, and the vertical grab bar is on the open end and is only about 12 inches long and less than the minimum required length of 24 inches, in violation of Federal Law 2010, ADAAG §§ 607.4.1.2 and 607.4.2.2. The Plaintiff observed these conditions.

y. In the restroom of guestroom 306, the bathtub controls and shower spray unit are not between the centerline and the open side of the bathtub/shower, in violation of Federal Law 2010, ADAAG §§ 607.5 and 608.5. The Plaintiff encountered these conditions, and it was very difficult for him to use these controls.

z. In the restroom of guestroom 306, the shower spray unit is hooked in at about 73 inches above the floor of the bathtub/shower, and it is higher above the floor than the maximum allowed height of 48 inches above the finish floor, and to unseat it from its holder requires tight grasping, in violation of Federal Law 2010, ADAAG §§ 607.6 and 308.2. The Plaintiff tried but could not use the shower spray due to these conditions.

aa. In the restroom of guestroom 306, the space between the grab bar and the phone above it is about 7 inches and less than the required minimum gap of 12 inches, in violation of Federal Law 2010, ADAAG § 609.3. The Plaintiff observed this condition.

bb. In the restroom of guestroom 306, the bottom edge of the mirror's reflecting surface is about 44 inches above the finish floor and higher than the maximum allowed height of 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3. In his wheelchair, the Plaintiff could not see his full face in this mirror due to the height of its reflecting surface above the floor.

cc. In the restroom in guestroom 306, the water closet or toilet does not have the flush control mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010, ADAAG § 604.6. Due to the location of the flush control, the Plaintiff could not flush this toilet by himself.

dd. In the restroom in guestroom 306, the towel shelf holding the large bath towels is about 58 inches above the finish floor and higher than the maximum reach height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2. Due to the height of this shelf, the Plaintiff could not reach the large bath towels from his wheelchair.

**POOL**

ee. The force needed to open the door to the pool area is about 14 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. Due to the force necessary to open this door, the Plaintiff could not open this door by himself.

ff. The walking surface of the accessible route to the pool lift has cross slopes steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3. The cross slopes of the walking surface of the accessible route to the pool lift made the Plaintiff unstable in his wheelchair.

**VENDING AREA**

gg. The snack vending machine keys or buttons are located at about 52 to 54 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor where the reach depth is less than 20 inches, in violation of Federal Law 2010, ADAAG § 308.2.2. Due to the height of such keys or buttons, the Plaintiff could not use the vending machine from his wheelchair.

**FITNESS CENTER**

hh. The force needed to open the door to the fitness center is about 10 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9. The Plaintiff encountered this condition, and due to the force necessary to open the door, he could not open this door by himself.

ii. The elapsed time for the fitness door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds, which time is less than the minimum

required time of 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1. The Plaintiff observed this condition.

jj. The clear floor or ground space between work-out machines in the fitness center is about 21 inches and less than the minimum required clearance of 30 inches, in violation of Federal Law 2010, ADAAG § 305. The Plaintiff observed this condition.

kk. The clear floor or ground space between the wall and the multi-function work-out equipment platform is less than the required clear floor space of 30 inches, in violation of Federal Law 2010, ADAAG § 305. The Plaintiff observed this condition.

ll. The phone in the fitness center is installed higher than the maximum height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2. The Plaintiff observed this condition.

30. All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

31. The discriminatory violations described in paragraph 29 are not an exclusive list of the Defendant's ADA violations. Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

32. The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged

by the Defendant because of the Defendant's ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

33. Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq. Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

34. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

35. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

36. Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the

Defendant is required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

37. Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less). All other conditions precedent have been met by Plaintiff or waived by the Defendant.

38. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Comfort Inn and adjacent parking lot spaces to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facility until such time as the Defendant cures their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a. That the Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require

the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze________________
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net
*Attorney for Plaintiff Fred Nekouee*